**IN THE UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| BRENNYA GRIFFIN<br>DEJANEKE JONES<br>SHEILA MCLEMORE<br><br>Plaintiffs,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC,<br><br>Defendant. | Civil Action No. ______________<br><br>**COMPLAINT**<br>**WITH JURY TRIAL DEMAND** |

Plaintiffs, Brennya Griffin ("Griffin"), Dejaneke Jones ("Jones"), and Sheila McLemore ("McLemore"), collectively, the "Plaintiffs", by counsel, and as for their Complaint against the Defendant, they allege as follows:

## PRELIMINARY STATEMENT

1. This is an action for actual, statutory and punitive damages, costs, and attorneys' fees brough pursuant to 15 U.S.C. § 1681, *et seq*. (the Fair Credit Reporting Act or "FCRA")

## JURISDICTION

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and/or 15 U.S.C. § 1681p.

## PARTIES TO THIS ACTION

3. The Plaintiffs are all natural people residing in Virginia, and at all times relevant to this Complaint, each was a "consumer" as that term is defined in FCRA, at 15 U.S.C. § 1681a(c).

4. Defendant, Equifax Information Services, LLC ("Equifax"), regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties for monetary compensation and uses interstate commerce to furnish the reports.

**ALLEGATIONS OF FACT AS TO SPECIFIC PLAINTIFFS**

***Defendant's Specific Conduct Regarding Brennya Griffin***

5. In June 2026, Plaintiff Griffin visited www.AnnualCreditReport.com to request her credit files from the credit reporting agencies, Equifax, Experian Information Solutions, Inc. and Trans Union, LLC (collectively, the "CRAs").

6. Appearing in the Credit Account section of her Equifax credit file were tradelines described as Debt Buyer Accounts.

7. Listed in the Credit Account section of an Equifax credit file are debts that are the result of credit issued, or money loaned from a creditor or lender to a debtor. Such accounts include but are not limited to revolving accounts, mortgage accounts, and any other installment loans or open lines of credit.

8. Conversely, listed in the Collections section of an Equifax credit file are accounts that have been transferred from a lender or creditor to a collection agency or sold by a lender or creditor to a debt buyer.

9. A debt buyer account should never appear in the Credit Account section of an Equifax credit file because a debt buyer will never issue credit or loan money to a debtor.

10. Plaintiff Griffin never obtained a Credit Account from the debt buyers listed in her Equifax credit file.

11. None of the debt buyer accounts identified the original creditor.

12. In addition to the errant debt buyer accounts, Equifax reported numerous other inaccurate items that could have been prevented—with the adoption and implementation of

reasonable procedures for assuring maximum accurate credit reports—from appearing in Plaintiff Griffin's credit file.

13. Equifax prepared credit reports on Griffin that contained the errant debt buyer account, and those reports were furnished to third parties.

***Defendant's Specific Conduct Regarding Dejaneke Jones***

14. In June 2026, Plaintiff Jones visited www.AnnualCreditReport.com to request her credit files from the CRAs.

15. Appearing in the Credit Account section of her Equifax credit file was a tradeline described as Debt Buyer Accounts.

16. Listed in the Credit Account section of an Equifax credit file are debts that are the result of credit issued, or money loaned from a creditor or lender to a debtor. Such accounts include but are not limited to revolving accounts, mortgage accounts, and any other installment loans or open lines of credit.

17. Conversely, listed in the Collections section of an Equifax credit file are accounts that have been transferred from a lender or creditor to a collection agency or sold by a lender or creditor to a debt buyer.

18. A debt buyer account should never appear in the Credit Account section of an Equifax credit file because a debt buyer will never issue credit or loan money to a debtor.

19. Plaintiff Jones never obtained a Credit Account from the debt buyer.

20. The debt buyer accounts did not identify the original creditor.

21. In addition to the errant debt buyer accounts, Equifax reported numerous other inaccurate items that could have been prevented—with the adoption and implementation of reasonable procedures for assuring maximum accurate credit reports—from appearing in Plaintiff Jones' credit file.

22. Equifax prepared credit reports on Jones that contained the errant debt buyer accounts, and those reports were furnished to third parties.

***Defendant's Specific Conduct Regarding Sheila McLemore***

23. In April 2026, Plaintiff McLemore visited www.AnnualCreditReport.com to request her credit files from the CRAs.

24. Appearing in the Credit Account section of her Equifax credit file was a tradeline described as a Debt Buyer Account.

25. Listed in the Credit Account section of an Equifax credit file are debts that are the result of credit issued, or money loaned from a creditor or lender to a debtor. Such accounts include but are not limited to revolving accounts, mortgage accounts, and any other installment loans or open lines of credit.

26. Conversely, listed in the Collections section of an Equifax credit file are accounts that have been transferred from a lender or creditor to a collection agency or sold by a lender or creditor to a debt buyer.

27. A debt buyer account should never appear in the Credit Account section of an Equifax credit file because a debt buyer will never issue credit or loan money to a debtor.

28. Plaintiff McLemore never obtained a Credit Account from the debt buyer.

29. The debt buyer account did not identify the original creditor.

30. In addition to the errant debt buyer account, Equifax reported numerous other inaccurate items that could have been prevented—with the adoption and implementation of reasonable procedures for assuring maximum accurate credit reports—from appearing in Plaintiff McLemore's credit file.

31. Equifax prepared credit reports on McLemore that contained the errant debt buyer account, and those reports were furnished to third parties.

## FACTS COMMON TO ALL PLAINTIFFS

### *Equifax's Inaccurate Credit Reporting*

32. Equifax has been sued repeatedly for misrepresenting a collection account as a credit account and for failing to disclose the original creditor of a collection account. *Davis v. Equifax Info. Services LLC*, 8:25-cv-2567-TPB-AAS (M.D. Fla.); *Blevins v. Equifax Info. Services LLC*, 25-cv-23481-BLOOM/Elfenbein (S.D. Fla.); *Clarke v. Equifax Info. Services LLC*, No. 8:25-cv-01499 (M.D. Fla.); *Aguirre v. Equifax Info. Services LLC*, 0:25-cv-61099 (S.D. Fla.).

33. Due to an error in certain debt buyers' reporting mechanism, the debt buyers *always* report debts in a manner that misrepresents the character and/or type of debt and results in debts appearing as credit accounts instead of collections.

34. Equifax knows that certain debt buyers are furnishing inaccurate information when they represent that they are a creditor collecting on a credit account.

35. Despite being aware of the debt buyers' systemic inaccurate reporting, Equifax has failed to adopt and/or implement procedures to prevent the debt buyers' false representation of credit accounts in consumer reports that Equifax prepares for publication to third parties.

36. The debt buyers have not fixed the problem on their end because of the cost to change their reporting procedures.

37. Further, the debt buyers elect not to change their reporting procedures because they benefit from having the debts appear as credit accounts.

38. Specifically, a large percentage of the debts reported by debt buyers are either debts that they do not own, or that debtors do not owe. In order to increase the chance of a debtor paying and not challenging such a debt, debt buyers will allow the debts to appear as credit accounts.

39. Reason being is that a collection listed as a credit account causes confusion to debtors and that confusion often leads to the debtors paying a debt that they do not owe.

40. Equifax believes that it can get away with this illegal conduct because the general profile of the affected debtors are marginalized people without the resources to challenge Equifax.

***Equifax's Incomplete Credit File Disclosure(s)***

41. The FCRA further requires that a CRA, such as Equifax, clearly and accurately disclose all information in a consumer's file upon request from such consumer.

42. Although debt buyers misclassify collection accounts as credit accounts when they report debts to Equifax, the debt buyers are reporting the name of the original creditor.

43. Despite receiving information on a purported original creditor, Equifax did not disclose the information on the original creditor to the Plaintiffs.

44. According to the Consumer Data Industry Association ("CDIA"), the industry leading organization for furnishers and consumer reporting agencies, the "original creditor is required for collection agencies" and "must be present each time the account is reported."

45. Further, the CDIA states the "purpose of reporting the original creditor name is to help consumers identify the source of accounts when they appear on credit reports."

46. Continuing, the CDIA notes that "[w]ithout the original creditor names, consumers may not know what the accounts represent."

47. Thus, Equifax knows that it is required to report the original creditor's name and its' failure to do so will cause debtors not to recognize the account.

48. Notably, Equifax's sister CRAs, Experian and Trans Union, have abided by the CDIA's edicts and implemented procedures that assure the original creditor name is included in all collection accounts that appear in their reports.

49. In lawsuits against Trans Union, the CRA has described a procedure to assure maximum accuracy that reviews all METRO II data for format errors like "data with mandatory fields that are blank" or "for anomalies in content (such as a creditor who normally reports 10% of its accounts as in collection suddenly reporting 90% of its accounts in collection" prior to the data being loaded to the database.

50. If Equifax had made the same investment in its procedures that were made by both Experian and Trans Union, then Equifax's credit reports would not be littered with collection accounts that do not contain the original creditor's name.

51. Nonetheless, Equifax continues to knowingly omit the original creditor's name because Equifax does not want to incur the costs of implementing a procedure to correct the debt buyers' misclassification of the accounts.

52. While Equifax does not want to incur the cost of correcting the problem, Equifax continues to accept information from unreliable debt buyers because they are a significant source of income for Equifax.

53. Equifax has conducted a cost-benefit analysis on whether to incur the costs to fix the error or to apportion a small percentage of those would-be costs to litigating claims brought by aggrieved debtors that fell victims to its conduct.

54. In choosing to litigate rather than correct, Equifax was motivated to adopt and act on an interpretation of section 1681g that gave it grounds to litigate a defense against the claims that debtors were bound to bring against Equifax for its intentional violations of the FCRA.

55. Because the language in section 1681g and the obligations of a CRA that arise from the said language are unambiguous, to give cover to an otherwise indefensible defense, Equifax had to purposely adopt a reading of section 1681g of the FCRA that contravened the clear objective and instruction of the statute.

56. To achieve its purpose of adopting an interpretation of § 1681g that gave it cover and/or plausible denial, Equifax reads in an accuracy obligation in § 1681g where there is absolutely no language to support such reading.

57. Specifically, while the statue clearly reads "All information in the consumer's file at the time of the request" must be "clearly and accurately disclose[d] to the consumer," § 1681g(a)(1)(A), Equifax claims that § 1681g only covers inaccurate information.

58. The Supreme Court has instructed that entities governed by FCRA to steer away from interpretations of the FCRA that have no foundation based in the language of the statute. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007).

59. There is no language in § 1681g to support Equifax's interpretation that § 1681g governs only information that is inaccurate.

60. Further, the Supreme Court has instructed anyone governed by the FCRA to heed the warnings and/or holdings of the circuit courts of appeals when it comes to interpreting duties under the FCRA. And the Second Circuit stated, albeit in an unpublished opinion, that "§ 1681g requires consumer reporting agencies to 'clearly and accurately disclose ... [*a*]*ll* information,' not *all accurate information*." *Selvam v. Experian Information Solutions, Inc.*, 651 Fed. Appx. 29, 33 (2d Cir. 2016) (citing 15 U.S.C. § 1681g(a) (emphasis in original).

61. The *Selvam* opinion was rendered in 2016, so Equifax has been on notice, from the Second Circuit, that its interpretation of section 1681g(a) was inaccurate for nearly 10 years.

62. Additionally, during that same period, in 2015, Equifax was sued by 30+ state attorney generals for, among other things, failing to report the original creditor. More particularly, as a result of the state attorneys' litigation, Equifax agreed to "revise training materials and adopt policies and procedures to notify and instruct Collection Furnishers that the name of the Original Creditor … [is a] mandatory reporting requirement[], and [Equifax] shall reject data that is not provided with the name of the Original Creditor."[1]

63. Moreover, Equifax has *direct* knowledge that its decision to omit the identity of original creditors when reporting a collection account is causing serious harm to consumers. In a recent lawsuit in the Middle District of Florida, Equifax admitted that its failure to report the name of the original creditor in collection accounts has led to "numerous other lawsuits filed against Equifax." *Clarke v. Equifax Information Services, LLC*, No. 8:25-cv-01499, ECF No. 20, fn. 1 (M.D. Fla. Oct. 1, 2025) (citing cases)

64. And based on a review of Pacer for cases filed against Equifax, consumers have been suing Equifax for failing to report the name of the original creditor for over a decade now.

65. Considering Equifax has not corrected this error after being sued by consumers for years on in, the costs of litigating these lawsuits for Equifax have not been sufficient enough to deter it from continuing to violate the FCRA.

66. Therefore, a substantial punitive damages award is in tow to be levied against Equifax so that it is deterred from violating the FCRA in the future.

**COUNT I**
**VIOLATIONS OF THE FCRA 15 U.S.C. § 1681e(b)**

---

[1] https://www.ohioattorneygeneral.gov/Files/Briefing-Room/News-Releases/Consumer-Protection/2015-05-20-CRAs-AVC.aspx

67. Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiffs' credit reports.

68. As a result of Defendant Equifax's violations of 15 U.S.C. §1681e(b), Plaintiffs suffered actual damages, including but not limited to: harm to their credit score and reduced credit opportunities, frustration and anxiety, embarrassment and humiliation, shame, irritability and difficulty concentrating, and other emotional or mental distress that, at times, culminated into physical sickness or ailments, such as headaches and sleep loss.

69. The violations by Defendant Equifax were willful, rendering Equifax liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Equifax was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o.

70. Plaintiffs are entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from Defendant Equifax in amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**COUNT II**
**VIOLATIONS OF THE FCRA 15 U.S.C. § 1681g**

71. Pursuant to 15 U.S.C. § 1681g(a)(1), CRAs are mandated to provide a consumer with all information in the consumer's file upon request from the consumer.

72. Defendant Equifax violated 15 U.S.C. § 1681g(a)(1), by failing to provide the Plaintiffs with all information in their files upon request of those files by the Plaintiffs.

73. Defendant Equifax violated § 1681g(a)(1) by failing to provide Plaintiffs with the original creditor names for certain collection accounts.

74. As a result of Defendant Equifax's conduct, action, and inaction, Plaintiffs suffered damage as alleged above, including by example only and without limitation: deprived of important information, hampered ability to correct errors in their reports, cost and time to search for the

withheld information, frustration and anxiety, feelings of fear, feelings of worry, embarrassment and humiliation, and other emotional and mental distress.

75. The violations by Defendant Equifax were willful, rendering Equifax liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, Equifax was negligent, entitling Plaintiffs to recovery under 15 U.S.C. § 1681o.

76. Plaintiffs are entitled to recover actual damages, statutory damages, punitive damages, costs, and attorney's fees from Defendant Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**JURY DEMAND**

77. Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demand a trial by jury of all issues triable by jury.

**PRAYER FOR RELIEF**

WHEREFORE, your Plaintiffs demand judgment for actual, statutory and punitive damages against Defendant Equifax; for their fees and costs; for prejudgment and post-judgment interest; and any other relief deemed appropriate by this Court.

Dated: August 6, 2026

**Johnson Consumer Law PLLC**

By: */s/ Brian E. Johnson*
Brian E. Johnson (VSB No. 92815)
40716 Keesling Farm Lane
Lovettsville, VA 20180
P: 540.518.8953
F: 540.985.4365
brian@johnsonconsumerlaw.com
**Counsel for Plaintiff**